UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-00237-D

JERRY BRYANT and )
CATHLEEN BRYANT, )
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　)
　　　　v. ) **MEMORANDUM &**
　　　　　　　　　　　　　　　　) **RECOMMENDATION**
WELLS FARGO BANK, NATIONAL )
ASSOCIATION, et al., )
　　　　　　　　　　　　　　　　)
　　　　Defendants. )

This matter is before the Court on Defendant Hutchens, Senter & Britton, P.A.'s motion to dismiss [DE-52]. Plaintiffs filed no response. Chief Judge James C. Dever III has referred the motion to the undersigned, pursuant to 28 U.S.C. § 636(b)(1), for a memorandum and recommendation.[1] For the reasons that follow, the undersigned recommends that Hutchens, Senter & Britton, P.A. ("HSB") be dismissed from this action.

## STATEMENT OF THE CASE

On June 14, 2010, Plaintiffs filed, *pro se*, the Complaint in this action alleging various federal and state law claims related to a Deed of Trust on Plaintiffs' home located at 2904 Falkirk Place, Raleigh, North Carolina (the "Property"). [DE-1.] On October 12, 2010, counsel entered an appearance of behalf of Plaintiffs [DE-9], and on January 18, 2011, Plaintiffs filed the Amended Complaint [DE-12] that is the subject of the instant motion to dismiss. In the Amended Complaint, Plaintiffs alleged claims against all Defendants for breach of contract,

---

[1] Two additional motions to dismiss filed in this case by Defendants Brock & Scott, PLLC, Brock & Scott Holdings, Inc., and Jeremy B. Wilkins [DE-45] and Defendants Shapiro & Ingle, LLP, Grady Ingle, Elizabeth B. Ells, and Richard McNeely [DE-56] have also been referred to the undersigned and will be addressed in a separate memorandum and recommendation.

violation of the Real Estate Settlement Procedures Act, the Truth in Lending Act, the Fair Debt Collection Practices Act, and the Fair Credit Reporting Act, unfair and deceptive trade practices, trespass to real property, conversion, fraud, quiet title, violations of North Carolina General Statue 58-70 *et seq.*, 75-50 *et seq.*, and 45-90 *et seq.* (all of which pertain to debt collection), and punitive damages. Am. Compl. ¶¶ 89-147.

## STATEMENT OF THE FACTS

These are the relevant facts as alleged by Plaintiffs, Jerry and Cathleen Bryant (the "Bryants"), in their Amended Complaint. In February 1996, Jerry Bryant refinanced the first Deed of Trust on the Property with Universal American Mortgage Company, LLC. Am. Compl. ¶ 52. The note on the Property (the "Note") was sold initially in June 2001 and then securitized, pooled, and sold several times thereafter. *Id.* ¶ 53. Wells Fargo allegedly became the servicer of the Note in January 2007 and the owner of the Note in June 2009, but failed to provide Plaintiffs with "adequate proof or documentation" thereof. *Id.*

The Note became delinquent for the March, April and May 2009 payments in the total amount of $2,367.22, and at the end of May 2009 Plaintiffs made a payment of $2,375.00 to Wells Fargo. *Id.* ¶ 55. Wells Fargo returned Plaintiffs' payment and informed them that the loan was in foreclosure status, that it believed the Property to be vacant and abandoned, and that Plaintiffs should contact Wells Fargo's attorney. *Id.* ¶¶ 56-57. Plaintiffs contend that the Property was never abandoned and was continuously occupied. *Id.* ¶ 59.

On June 15, 2009, Defendant LPS Field Services, Inc. ("LPS") entered the Property, turned off the main electrical breaker, and changed the front door locks. *Id.* ¶ 60. On that same date, a number of electronics were stolen from the Property. *Id.* Subsequently, LPS or other entities representing Wells Fargo attempted to enter the Property on a number of occasions. *Id.*

2

On June 18, 2009, Cathleen Bryant discussed a potential loan modification with Wells Fargo and submitted a payment of $2,341.00, which Wells Fargo indicated would bring the loan current. *Id.* ¶ 62. On June 23, 2009, Plaintiffs were served with a Notice of Hearing and Notice of Foreclosure. *Id.* ¶ 63. On July 6, 2009, Plaintiffs were informed by Wells Fargo that the loan modification request had been denied for failure to submit documentation, despite Wells Fargo's timely receipt of the documentation. *Id.* ¶ 65.

On July 16, 2009, Plaintiffs received correspondence from Brock & Scott PLLC ("B&S"), which stated that Plaintiffs could pay $3,550.72 ($2,550.72 to Wells Fargo and $1,000.00 to B&S) to reinstate their loan. *Id.* ¶ 67. Plaintiffs sent the requested payment along with a letter of dispute and request for verification, and they received a response from B&S indicating that the funds had been sent to Wells Fargo. *Id.* ¶¶ 68, 72.

In August, September, and November 2009, Plaintiffs received notices that their loan was past due for these months and that foreclosure would be initiated if the loan was not brought current. *Id.* ¶¶ 73-75. After discussions with Wells Fargo, Plaintiffs paid $658.80, which Wells Fargo indicated would bring the loan current. *Id.* ¶¶ 77-78. Thereafter, Plaintiffs continued to request from Wells Fargo an explanation of all charges on their account during the foreclosure proceeding and how the various payments had been applied, but failed to receive a satisfactory response. *Id.* ¶¶ 79-82. Plaintiffs then began to withhold payments from Wells Fargo, which resulted in another threat of foreclosure. *Id.* ¶ 83.

On June 19, 2010, after Plaintiffs initiated this action, they agreed with Wells Fargo to pay $2,520 to bring their loan current and to allow this action to resolve the dispute with respect to the 2009 foreclosure. *Id.* On June 22, 2010, Wells Fargo, through Defendant Shapiro &

Ingle, again initiated foreclosure proceedings, which Plaintiffs subsequently removed to this Court. *Id.* ¶¶ 83-84.

## DISCUSSION

Defendant HSB contends that the allegations in Plaintiffs' Amended Complaint fail to state a claim against HSB for which relief can be granted and that, pursuant to Rule 12(b)(6), HSB should be dismissed from this action.

### I.  Standard of Review

The purpose of a 12(b)(6) motion for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Alfaro v. United States*, No. 5:09-CT-3073-D, 2011 WL 561320, at *1 (E.D.N.C. Feb. 8, 2011) (Dever, C.J.) (citing *Iqbal*, 129 S. Ct. at 1949-50; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)).

### II.  Analysis

The Amended Complaint contains the following allegations with respect to HSB:

> 39. Defendant Hutchens, Senter & Britton, P.A. (hereinafter referred to as "Hutchens") is a corporation, principally located in Fayetteville, North Carolina, who is authorized to conduct business in the state of North Carolina and who regularly engages in commerce in the state of North Carolina.
>
> 40. Defendant Hutchens regularly purchases delinquent consumer debts for the purposes of collecting or attempting to collect on those debts.
>
> 41. Defendant Hutchens regularly collects or attempts to collect consumer debts originally due and owing or allegedly due and owing to Defendant Wells Fargo, among other institutions.
>
> 42. Defendant Hutchens' employees, affiliates, directors, agents, attorneys, paralegals and/or partners act under the direction and supervision of Defendant Hutchens, therefore, at all times Defendant Hutchens is vicariously liable for the actions of its employees, affiliates, directors, agents, attorneys, paralegals and/or partners under the theory of respondeat superior.
>
> 43. Defendant Hutchens is not licensed with the North Carolina Department of Insurance to collect debts in the state of North Carolina.
>
> . . . .
>
> 61. According to the Wake County Clerk of Court, as of June 15, 2009, no entity or person, including Wells Fargo, Brock, Hutchens, or Wilkins had filed a Notice of Foreclosure hearing or a Notice of Foreclosure sale with the Court. . . .

Am. Compl. ¶¶ 39-61. The Amended Complaint further notes that "Mortgage Electronic Registration Systems, Inc., through Defendant substitute trustee Hutchens, asserted that it was the owner of the Note on or about November, 2005[.]" *Id.* at 9 n.1.

Plaintiffs' first five allegations regarding HSB are general allegations regarding HSB's business. *Id.* ¶¶ 39-43. The only specific allegations against HSB regarding the Plaintiffs are that HSB, among other Defendants, never filed a Notice of Foreclosure hearing or sale with the Court, *id.* ¶ 61, and that Mortgage Electronic Registration Systems, Inc. through HSB, as substitute trustee, asserted ownership of the Note in November 2005, *id.* at 9 n.1. HSB is not

5

specifically named with respect to any of Plaintiffs' claims, which generally refer to the actions of the collective "Defendants." *Id.* ¶¶ 89-147.

As explained in *Iqbal*, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). None of the factual allegations against HSB allow the undersigned to make such an inference. For example, Plaintiffs allege that HSB is not licensed to collect debts in North Carolina, Am. Compl. ¶ 43, but fail to allege that HSB attempted to collect a debt from Plaintiffs. The claims alleged by Plaintiffs under North Carolina General Statue 58-70 *et seq.*, 75-50 *et seq.*, and 45-90 *et seq.*, all of which pertain to debt collection, state that "Defendants" attempted to collect a debt through various prohibited means, *id.* ¶¶ 131-143, but fail to specify any particular conduct with respect to HSB. Simply alleging causes of action against collective "Defendants" without any factual allegations of wrongful conduct with respect to HSB is insufficient to meet the pleading standard of Rule 8, as interpreted by *Iqbal* and *Twombly*. *See Boykin Anchor Co., Inc. v. AT&T Corp.*, No. 5:10-cv-591-FL, 2011 WL 1456388, at *4 (E.D.N.C. April 14, 2011) (concluding that "plaintiff cannot rely on bare allegations relating to the conduct of "all defendants" to hold AT & T Corp. liable, but must identify specific acts or conduct taken by each defendant to state a claim"). Plaintiffs have failed to allege any misconduct specifically attributable to HSB. Accordingly, the undersigned recommends that HSB be dismissed from this action.

## CONCLUSION

It is hereby **RECOMMENDED** that Defendant's motion to dismiss [DE-52] be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 5th day of January, 2012.

DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE