UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-00237-D

JERRY BRYANT and )
CATHLEEN BRYANT, )
 )
    Plaintiffs, )
 )
        v. )        **MEMORANDUM &**
 )        **RECOMMENDATION**
WELLS FARGO BANK, NATIONAL )
ASSOCIATION, et al., )
 )
    Defendants. )

This matter is before the Court on the motions to dismiss of Defendants Brock & Scott,

PLLC, Brock & Scott Holdings, Inc., and Jeremy B. Wilkins (collectively, the "Brock

Defendants") [DE-45] and Defendants Shapiro & Ingle, LLP, Grady Ingle, Elizabeth B. Ells, and

Richard McNeely (collectively, the "Shapiro Defendants") [DE-56]. Plaintiffs filed responses in

opposition to both motions [DE-58 & 59], and the Brock Defendants and Shapiro Defendants

each filed replies [DE-60 & 63]. Chief Judge James C. Dever III has referred the motions to the

undersigned, pursuant to 28 U.S.C. § 636(b)(1), for memorandum and recommendation. For the

reasons that follow, it is recommended that the motions to dismiss be granted.

## STATEMENT OF THE CASE

On June 14, 2010, Plaintiffs filed, *pro se*, the Complaint [DE-1] in this action alleging

various federal and state law claims related to a mortgage on Plaintiffs' home located at 2904

Falkirk Place, Raleigh, North Carolina (the "Property"). On October 12, 2010, counsel entered

an appearance of behalf of Plaintiffs [DE-9], and on January 18, 2011, Plaintiffs filed the

Amended Complaint [DE-12] that is the subject of the instant motions to dismiss. In the

Amended Complaint, Plaintiffs alleged claims against all Defendants for breach of contract, unfair and deceptive trade practices ("NCUDTPA"), trespass to real property, conversion, fraud, quiet title, violation of the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and North Carolina General Statues 58-70 *et seq.* ("NCCAA"), 75-50 *et seq.* ("NCDCA"), and 45-90 *et seq.*, which pertain to debt collection. Am. Compl. ¶¶ 89-147.

## STATEMENT OF THE FACTS

These are the relevant facts as alleged by Plaintiffs, Jerry and Cathleen Bryant (the "Bryants"), in their Amended Complaint. In February 1996, Jerry Bryant refinanced the first mortgage on the Property with Universal American Mortgage Company, LLC ("UAMC"). *Id.* ¶ 52. The note on the Property (the "Note") was sold initially by UAMC in June 2001 and then securitized, pooled, and sold several times thereafter. *Id.* ¶ 53. Wells Fargo allegedly became the servicer of the Note in January 2007 and the owner of the Note in June 2009, but failed to provide Plaintiffs with "adequate proof or documentation" thereof. *Id.*

The Note became delinquent for the March, April, and May 2009 payments in the total amount of $2,367.22, and at the end of May 2009 Plaintiffs made a payment of $2,375.00 to Wells Fargo. *Id.* ¶ 55. Wells Fargo returned Plaintiffs' payment and informed them that the loan was in foreclosure status, that it believed the Property to be vacant and abandoned, and that Plaintiffs should contact Wells Fargo's attorney. *Id.* ¶¶ 56-57. Plaintiffs contend that the Property was never abandoned and continuously occupied. *Id.* ¶ 59.

On June 15, 2009, Defendant LPS Field Services, Inc. ("LPS") entered the Property, turned off the main electrical breaker, and changed the front door locks. *Id.* ¶ 60. On that same

2

date, a number of electronics were stolen from the Property. *Id.* Subsequently, LPS or other entities representing Wells Fargo attempted to enter the Property on a number of occasions. *Id.*

On June 18, 2009, Cathleen Bryant discussed a potential loan modification with Wells Fargo and submitted a payment of $2,341.00, which Wells Fargo indicated would bring the loan current. *Id.* ¶ 62. On June 23, 2009, Plaintiffs were served with a Notice of Hearing and Notice of Foreclosure. *Id.* ¶ 63. On July 6, 2009, Plaintiffs were informed by Wells Fargo that the loan modification request had been denied for failure to submit documentation, despite Wells Fargo's timely receipt of the documentation. *Id.* ¶ 65.

On July 16, 2009, Plaintiffs received correspondence from Brock & Scott PLLC ("B&S"), which stated that Plaintiffs could pay $3,550.72 ($2,550.72 to Wells Fargo and $1,000.00 to B&S) to reinstate their loan. *Id.* ¶ 67. Plaintiffs sent the requested payment along with a letter of dispute and request for verification, and they received a response from B&S indicating that the funds had been sent to Wells Fargo. *Id.* ¶¶ 68, 72.

In August, September, and November 2009, Plaintiffs received notices that their loan was past due for these months and that foreclosure would be initiated if the loan was not brought current. *Id.* ¶¶ 73-75. After discussions with Wells Fargo, Plaintiffs paid $658.80, which Wells Fargo indicated would bring the loan current. *Id.* ¶¶ 77-78. Thereafter, Plaintiffs continued to request from Wells Fargo an explanation of all charges on their account during the foreclosure proceeding and how the various payments had been applied, but failed to receive a satisfactory response. *Id.* ¶¶ 79-82. Plaintiffs then began to withhold payments from Wells Fargo, which resulted in another threat of foreclosure. *Id.* ¶ 83.

On June 19, 2010, after Plaintiffs initiated this action, they agreed with Wells Fargo to pay $2,520.00 to bring their loan current and to allow this action to resolve their dispute with

3

respect to the 2009 foreclosure. *Id.* On June 22, 2010, Wells Fargo, through Defendant Shapiro & Ingle, again initiated foreclosure proceedings, which Plaintiffs subsequently removed to this Court. *Id.* ¶¶ 83-84.

## DISCUSSION

### I.    Standard of Review

The purpose of a 12(b)(6) motion for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Alfaro v. United States*, No. 5:09-CT-3073-D, 2011 WL 561320, at *1 (E.D.N.C. Feb. 8, 2011) (Dever, C.J.) (citing *Iqbal*, 129 S. Ct. at 1949-50; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)). "Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'" without converting the motion into one for summary judgment. *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## II.  Analysis

Both the Brock Defendants and the Shapiro Defendants acted, at different times, as substitute trustee under the Deed of Trust. Because they are similarly situated and raise many of the same arguments in their respective motions to dismiss, their motions will be addressed concurrently.

### a.  Breach of Contract

The Brock and Shapiro Defendants both contend that they not parties to either the Note or the Deed of Trust securing the Note and that, therefore, they cannot be liable for breach of contract. Plaintiffs counter that the Brock and Shapiro Defendants each acted as substitute trustee and exercised contractual duties under the Deed of Trust and that, therefore, they were parties to the Deed of Trust. Furthermore, in their responses to the instant motions, Plaintiffs contend that the Brock and Shapiro Defendants also breached their fiduciary duties as trustees.

With respect to their Breach of Contract claim, Plaintiffs generally allege that "[t]he acts and omissions of the Defendants constitute violations of both the Note and Deed of Trust and breaches of those agreements" and that "Plaintiffs are entitled to receive damages in an amount to be proven at trial." Am. Compl. ¶¶ 90-91.

Specifically, with respect to the Brock Defendants, Plaintiffs allege the following facts that are arguably relevant to a breach of contract claim: (1) "Wilkins appointed his own firm, Brock, as the substitute trustee in the matter. Wilkins then, on behalf of Brock, acted as substitute trustee in the 2009 foreclosure attempt on the Property," *id.* ¶ 46; and (2) violations of the Deed of Trust occurred when Wilkins filed a Notice of Foreclosure Sale prior to a determination at a hearing that the Trustee could sell the Property, *id.* ¶ 63.

Specifically, with respect to the Shapiro Defendants, Plaintiffs allege the following facts that are arguably relevant to a breach of contract claim: (1) "Ingle acted as trustee in his individual capacity of Plaintiff's [sic] property from June, 2010 through September, 2010," *id.* ¶ 23; (2) "Ells acted as trustee in her individual capacity of Plaintiff's property [sic] from June, 2010 through September, 2010," *id.* ¶ 26; (3) "McNeely was appointed individually as the substitute trustee of the Property by Shapiro & Ingle. McNeely is not employed by Shapiro & Ingle but, on information and belief, is affiliated with Shapiro & Ingle, used Shapiro & Ingle letterhead for correspondence and is not a 'neutral' trustee," *id.* ¶ 48; (4) "McNeely was appointed as substitute trustee by China Brown who, on information and belief, is a "robo-signer" for Wells Fargo," *id.* ¶ 49; (5) "After agreeing to receive Plaintiff's payment, Wells, 'neutral trustee' Defendants Ingle and Ells and Defendant Shapiro & Ingle initiated foreclosure proceedings on June 22, 2010. Ingle and Ells sent a Notice to Plaintiffs, on Shapiro & Ingle letterhead, on June 24, 2010. Nothing was filed until June 28, 2010, well after Defendants had received payment in full," *id.* ¶ 83; (6) "After Plaintiffs timely removed that foreclosure matter to this Honorable Court, Defendant Wells, led by trustee Defendants McNeely, Ingle, Ells and their counsel Defendant Shapiro & Ingle, continued to proceed with foreclosure attempts in North Carolina State Court," *id.* ¶ 84; and (7) "Defendants, including a purportedly 'neutral' trustee noticed multiple hearings, made multiple filings, and continually pursued foreclosure of the Property against a pro se defendant who had timely removed the matter to federal court," *id.* ¶ 85.

The North Carolina Court of appeals has held that where a defendant is not a party to a contract, "as a matter of law he cannot be held liable for any breach that may have occurred." *Canady v. Mann*, 419 S.E.2d 597, 601 (N.C. Ct. App. 1992). There is no dispute that neither the

6

Brock Defendants nor the Shapiro Defendants were parties to the Note or the Deed of Trust when those documents were initially executed. The question then becomes whether the Brock and Shapiro Defendants, by acting as substitute trustee, later became parties to the Deed of Trust. Plaintiffs argue that these Defendants are liable for breach of contract, because the trustee's right to foreclose stems from *contractual* powers granted to the trustee, citing *Sprouse v. North River Ins. Co.*, 344 S.E.2d 555, 559 (N.C. Ct. App. 1986), and that the Deed of Trust imposes fiduciary duties and *contractual* duties on the trustee, citing *Sloop v. London*, 219 S.E.2d 502 (N.C. Ct. App. 1975). Both the *Sprouse* and *Sloop* cases are distinguishable from the present case.

The *Sprouse* case involved a suit against an insurance company by a mortgagor, mortgagee and trustee to recover the proceeds of an insurance policy on a property that was destroyed by fire after a foreclosure sale, but while the mortgagors remained in possession. 344 S.E.2d at 557-58. The insurance company counterclaimed for indemnity from the trustee on the grounds that the trustee failed to enforce the foreclosure sale. *Id.* at 558. In rejecting the insurance company's argument that the mortgagor's interest had been extinguished by the foreclosure sale, the court stated that "the sale here took place under contractual powers granted the trustee, made subject to certain statutory constraints of due process imposed by the General Assembly." *Id.* at 559 (citing *In re Burgess*, 267 S.E.2d 915, 918 (N.C. Ct. App. 1980) (explaining that, historically, foreclosure under a power of sale was a private contractual remedy)). The *Sprouse* court, in noting the contractual powers of the trustee, was drawing a distinction between a judicial foreclosure and a power of sale foreclosure. *Id.* Likewise, the *Burgess* court was drawing a distinction between the right to foreclose under a deed of trust and the clerk and the court's role in satisfying the statutory due process requirements of notice and hearing under North Carolina General Statues § 45-21.16. Therefore, neither the *Sprouse* nor the

7

*Burgess* courts considered whether a substitute trustee could be liable on a theory of breach of contract under the deed of trust, and those cases are inapposite to the issue presented here.

The *Sloop* case was a wrongful foreclosure action based on an alleged breach of fiduciary duty by a trustee. 219 S.E.2d at 518. The *Sloop* court recognized that the deed of trust, and North Carolina law, imposed a fiduciary duty on the trustee and that the trustee breached that duty and "the terms of the deed of trust." *Id.* at 519. Notwithstanding, it does not necessarily follow from *Sloop* that a breach of contract action based on the deed of trust would lie against a substitute trustee, because *Sloop* was not a breach of contract case and the *Sloop* court did not speak to that issue. In fact, neither party has cited a case such as this one, where a mortgagor brought against a substitute trustee a breach of contract action related to a foreclosure, nor has the undersigned independently found such a case. It is also noteworthy that while Plaintiffs contend they pled that the Brock and Shapiro Defendants were parties to the Deed of Trust and that they breached their fiduciary duties pursuant to the Deed of Trust, the undersigned has found no such allegations in the Amended Complaint. Therefore, it is recommended that Plaintiffs' breach of contract claims against the Brock and Shapiro Defendants be dismissed for failure to state a claim.

### b. Violation of RESPA

The Brock and Shapiro Defendants both contend that they did not act as a "servicer" of federally-related mortgage loans and that, therefore, they are not subject to liability under RESPA. Plaintiffs counter that because Wells Fargo designated the Brock and Shapiro Defendants to receive Plaintiffs' payments and correspondence regarding the loan, the Defendants were "servicing" Plaintiffs' loan. The Shapiro Defendants further contend that Plaintiffs do not allege that they ever sent a qualified written request ("QWR") to the Shapiro

8

Defendants. Plaintiffs counter that they have alleged that QWRs were sent to "Defendants," which would include the Shapiro Defendants.

Under RESPA, a "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3). Furthermore, "RESPA requires loan servicers to respond to a borrower's inquiries upon receipt of a qualified written request ("QWR"), and within sixty (60) days provide the borrower the name and telephone number of an individual who can provide assistance to the borrower." *Crispin v. BAC Home Loans Servicing, LP*, No. 5:11-cv-375-FL, 2011 WL 6294319, at *5 (E.D.N.C. Dec. 15, 2011) (citing 12 U.S.C. § 2605(e)).

With respect to their RESPA claims, Plaintiffs generally allege the following:

93.     Plaintiffs have repeatedly requested verification of Defendant Wells Fargo's owner and servicer status on Plaintiffs' Property with no response.

94.     Plaintiffs have repeatedly submitted numerous QWRs to Defendants regarding various issues.

95.     Defendants have failed to make appropriate corrections in Plaintiffs' account, failed to conduct adequate investigations regarding Plaintiffs' QWRs, failed to give reasonable responses to Plaintiffs'' [sic] QWRs, and continued to provide information regarding Plaintiffs' credit ratings following the submission of these QWRs.

96.     Accordingly, Plaintiffs are entitled to actual damages, statutory damages, and attorney fees pursuant to 12. U.S.C. § 2605 *et seq*.

9

Am. Compl. ¶¶ 93-96. Specifically, with respect to the Brock Defendants, Plaintiffs allege the following facts that are arguably relevant to the RESPA claim:

> 67.    On or about July 16, 2009, Plaintiffs received correspondence from B&S PLLC which included an invoice in the amount of $3,550.72 ($2,550.72 to Wells Fargo and $1,000.00 for Brock's attorney fees, respectively). The correspondence stated that this amount was to be paid by Plaintiffs in order to reinstate their loan and that these funds were to be received no later than July 29, 2009.

> 68.    On or about July 20, 2009, Plaintiffs sent a letter of dispute and request for verification of all fees associated with the $3,550.72 invoice to B&S PLLC. This letter included a cashier's check for $1,000.00 made payable to B&S PLLC and a cashier's check made payable to Wells Fargo for $2,550.72, well in advance of the July 29, 2009 deadline set by Wells Fargo.

> . . . .

> 71.    On or about August 12, 2009, Mrs. Bryant sent a detailed letter to B&S PLLC which explained her disputes and the discrepancies she had found in the invoices she had received and again requested verification of the amounts being charged to her.

> 72.    On or about August 13, 2009, Mrs. Bryant received correspondence from B&S PLLC which stated that Plaintiffs could obtain a copy of the dismissal of the proceedings at the courthouse, that all funds were mailed to Wells Fargo on July 22, 2009 and that B&S PLLC had closed their file. Attached to this correspondence was a document entitled Reinstatement Information which provided a breakdown of how the $3,550.72 that Plaintiffs had paid was applied to Plaintiffs' loan. Many of the dates and amounts did not match information that had previously been provided to Plaintiffs (see supra) nor did the amounts listed in the Reinstatement Information document match the amount in the accompanying letter from B&S PLLC.

> . . . .

> 77. On or about November 23, 2009, Mrs. Bryant made a Qualified Written Request (hereinafter referred to as "QWR") to Wells Fargo as well as B&S PLLC requesting an explanation of all items charged during the foreclosure proceedings, explanation of the inspection charges, and an explanation as to how Plaintiffs' account could be past due when Wells Fargo was still in possession of the $2,431.00 that had been offered in consideration of the loan modification process, which Wells Fargo had contractually agreed to return back in June 2009 and instead held without even applying the funds to Plaintiffs' account.

10

78. Mrs. Bryant also spoke with a representative of Wells Fargo about the discrepancies in the amount due for the November and December 2009 payments. Mrs. Bryant was told that there had been a credit to the account and therefore the only amount due was $658.80. Mrs. Bryant made an online payment of $658.80 at this time.

79. On or about November 27, 2009, November 28, 2009, December 14, 2009 and April 23, 2010, respectively, Plaintiffs submitted a QWR to Wells Fargo asking for, among other information, the name, address and telephone number of the current holder, current owner, current assignee and/or the service representative who had knowledge and the authority to correct errors regarding their note, an explanation for the discrepancies in the amounts owed which were all stated differently as evidenced by the mailed statements and the automated telephone system, an explanation concerning double charging of late fees, charging fees when not late with payment as well as another request of the disposition of $2,431.00 which had previously been placed in unapplied funds and never returned to Plaintiffs. Wells Fargo's responses to these requests were vague and confusing and ranged from "request is too broad to determine specific information needed," "all loan documents are provided to the borrower at the time of closing," "you are not a borrower listed on the loan" and "we consider the matters resolved."

*Id.* ¶¶ 67, 68, 71, 72 & 77-79. Plaintiffs made no specific factual allegations against the Shapiro Defendants that are arguably relevant to a RESPA claim.

As an initial matter, Plaintiffs' pleading of their RESPA claims against "Defendants" generally, Am. Compl. ¶¶ 94 & 95, makes it difficult to ascertain what specific provision of RESPA the Brock and Shapiro Defendants are alleged to have violated. A defendant must have fair notice of claims against it and the grounds upon which the claims rest. Fed. R. Civ. P 8(a)(2); *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, based on the factual allegations of the Amended Complaint and Plaintiffs' response to the instant motions, it appears that Plaintiffs are alleging that the Brock and Shapiro Defendants failed to adequately respond to QWRs in violation of 12 U.S.C. § 2605(e). Even assuming Plaintiffs have pled their RESPA claims sufficiently to provide fair notice to Defendants, the Plaintiffs RESPA claim against the Brock and Shapiro Defendants must fail, because these

11

Defendants, as substitute trustees, did not act as a "servicer" within the meaning of 12 U.S.C. § 2605(i)(2).

While Plaintiffs have cited one case to support their position that a substitute trustee is a "servicer" for purposes of RESPA, *Carter v. Deutsche Bank Nat. Trust Co.*, No. C09-3033BZ, 2010 WL 1875718, at *1 (N.D. Cal. May 7, 2010), the facts of the present case and the weight of the case law support a finding that the Brock Defendants were not "servicing" Plaintiffs' loan, as defined in 12 U.S.C. § 2605(i)(3), for purposes of RESPA. *See, e.g., Gomez v. Wells Fargo Home Mortgage*, No. 11-01725, 2011 WL 5834949, at *3-4 (N.D. Cal. Nov. 21, 2011) (concluding that defendant, as trustee on the deed of trust, was not a "servicer" under RESPA and recognizing that numerous other courts have held likewise); *Castrillo v. Am. Home Mort. Serv., Inc.*, No. 09-4369, 2010 WL 1424398, at *7 (E.D. La. Apr. 5, 2010) (concluding that defendant trustee did not service loan within the meaning of RESPA); *San Diego Home Solutions, Inc. v. Recontrust Co.*, No. 08cv1970, 2008 WL 5209972, at *2 (S.D. Cal. Dec. 10, 2008) (concluding that a trustee pursuant to a deed of trust was not a servicer of the loan under RESPA). Based on Plaintiffs allegations, they made their scheduled payments to Wells Fargo. Am. Compl. ¶ 55, 62. The Brock Defendants, as substitute trustee for purposes of the foreclosure action, merely collected allegedly past due payments and attorney's fees from Plaintiffs and forwarded the past due payments to Wells Fargo for application to Plaintiffs' loan. *Id.* ¶ 67, 72. The Brock Defendants did not receive "any scheduled periodic payments" as required by § 2605(i)(3), and there is no allegation that Plaintiffs made any payments to the Shapiro Defendants. Therefore, the Brock and Shapiro Defendants were not "servicing" Plaintiffs' loan as defined in § 2605(i)(3) and were not acting as a "servicer" as defined in § 2605(i)(2). Accordingly, Plaintiffs have failed to state a claim against them under RESPA.

12

Furthermore, even assuming, *arguendo*, that the Brock and Shapiro Defendants were servicers within the meaning of RESPA, the Complaint fails to state a claim against them for violations of RESPA. Plaintiffs contend that they sent a QWR to the Brock Defendants, to which the Brock Defendants timely responded that "Plaintiffs could obtain a copy of the dismissal of the proceedings at the courthouse, that all funds were mailed to Wells Fargo on July 22, 2009 and that B&S PLLC had closed their file." Am. Compl. ¶¶ 68, 72. The letter also included a statement of account, which Plaintiffs contend did not correspond with other information they had received regarding the loan. *Id.* ¶ 72. Unsatisfied with the Brock Defendants' response, Plaintiffs sent a second request to both the Brock Defendants and Wells Fargo. *Id.* ¶ 77. Plaintiffs made no allegations regarding the Brock Defendants' response, or lack thereof, as to the second request, and it appears that, thereafter, Plaintiffs pursued their complaints with Wells Fargo. *Id.* ¶ 78-79. Based on the factual allegations, the Brock Defendants responded to Plaintiffs' first request in conformity with 12 U.S.C. § 2605(e), and there is no allegation that they failed to respond to Plaintiffs' second request. *See Schwarts v. Bank of Am., N.A.*, No. 10-cv-1225, 2011 WL 1135001, at \*6 (D. Colo. Mar. 28, 2011) (concluding that plaintiff failed to state a claim under RESPA where defendant provided all information required in response to QWR). Therefore, Plaintiffs have failed to state a claim under RESPA against the Brock Defendants.

With respect to the Shapiro Defendants, Plaintiffs have made no factual allegations that they sent a QWR to the Shapiro Defendants, as they did with both Wells Fargo and the Brock Defendants. Plaintiffs' general allegations – that they submitted QWRs to "Defendants," Am. Compl. ¶ 94, and that "Defendants have failed to make appropriate corrections in Plaintiffs' account, failed to conduct adequate investigations regarding Plaintiffs'' QWRs, and failed to

13

give reasonable responses," *id.* ¶ 95 – do not satisfy the basic pleading requirements of *Iqbal* and *Twombly.* As this Court has previously held, "A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Alfaro v. United States*, No. 5:09-CT-3073-D, 2011 WL 561320, at *1 (E.D.N.C. Feb. 8, 2011) (Dever, C.J.) (citing *Iqbal*, 129 S. Ct. at 1949-50; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)). Plaintiffs' alleged RESPA claim against the Shapiro Defendants is devoid of any "factual enhancement." *Id.*

Accordingly, the undersigned recommends that Plaintiffs' RESPA claims against the Brock and Shapiro Defendants be dismissed for failure to state a claim.

### c. Violation of TILA

The Brock Defendants contend that TILA's disclosure requirements apply only to "creditors" and that they are not "creditors" under TILA. The Shapiro Defendants contend that none of the alleged violations of TILA apply to their actions as alleged by Plaintiffs. Plaintiffs did not respond to this part of the Brock or Shapiro Defendants' motions.

"Creditor" is defined in TILA as "only . . . a person who both (1) regularly extends . . . consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f). Both the Brock and Shapiro Defendants neither regularly extend consumer credit, nor are they the person to whom the debt arising from the mortgage loan was initially payable. *See* Am. Compl. ¶ 52 ("Mr. Bryant refinanced the first mortgage on his home . . . with UAMC."); *see also Thomas v. Green Point Mort. Funding*, No. 5:10-cv-365-D, 2011 WL 2457835, at *2 (E.D.N.C. June 16, 2011) (Dever,

14

C.J.) (dismissing TILA claim against defendant who was not the person from whom plaintiff obtained her mortgage loan).

Accordingly, the undersigned recommends that Plaintiffs' TILA claims against the Brock and Shapiro Defendants be dismissed.

### d. Violation of FDCPA

#### i. Brock Defendants

The Brock Defendants, in reliance on *Twombly*, contend that the allegations in the Amended Complaint are insufficient to give them notice of the facts underlying Plaintiffs' FDCPA claims. Plaintiffs counter that the Brock Defendants provided inconsistent information with respect to Plaintiffs' loan in various correspondence, citing both their Complaint and Amended Complaint ¶ 56,[1] and that, therefore, the Brock Defendants attempted to collect a debt from them without verifying the debt in question.

The stated purpose of the FDCPA is to "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Specifically with respect to requests by a borrower for validation of a debt, the FDCPA provides that "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt

---

[1] Paragraph 56 of both the Complaint and the Amended Complaint have no readily ascertainable relevance to Plaintiffs' alleged FDCPA claims against the Brock Defendants.

15

collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the

consumer[.]" *Id.* § 1692g(b).

With respect to their FDCPA claims, Plaintiffs generally allege the following:

103. Defendants communicated credit information about Plaintiff which Defendants knew, or should have known, to be false.

104. Defendants have engaged in activities in an attempt to collect a purported debt which include, but are not limited to, locking Plaintiffs out of their Property, converting Plaintiffs' personal property, engaging in numerous improper tactics in correspondence, and pursuing a litigation with no basis in law to do so.

105. Defendants failed to abide by the terms of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. and, accordingly, Plaintiffs are entitled to actual damages in an amount to be proven at trial, statutory damages, and their reasonable attorney fees.

Am. Compl. ¶¶ 103-105. Specifically, with respect to the Brock Defendants, Plaintiffs allege the

following facts that are arguably relevant to the FDCPA claims:

63. On or about June 23, 2009, Plaintiffs were served with a Notice of Hearing and Notice of Foreclosure Sale by the Sheriff of Wake County. This Notice was a week after Defendants had changed the locks on Plaintiffs' Property and five days after Wells Fargo had confirmed that no foreclosure efforts would take place during the loan modification approval process. The Notice of Foreclosure Sale filed by Wilkins also came prior to a determination at a hearing that the Trustee could sell the Property, which violated the Plaintiffs' Deed of Trust.

. . . .

67. On or about July 16, 2009, Plaintiffs received correspondence from B&S PLLC which included an invoice in the amount of $3,550.72 ($2,550.72 to Wells Fargo and $1,000.00 for Brock's attorney fees, respectively). The correspondence stated that this amount was to be paid by Plaintiffs in order to reinstate their loan and that these funds were to be received no later than July 29, 2009.

. . . .

72. On or about August 13, 2009, Mrs. Bryant received correspondence from B&S PLLC which stated that Plaintiffs could obtain a copy of the dismissal of the proceedings at the courthouse, that all funds were mailed to Wells Fargo on July 22, 2009 and that B&S PLLC had closed their file. Attached to this

16

correspondence was a document entitled Reinstatement Information which provided a breakdown of how the $3,550.72 that Plaintiffs had paid was applied to Plaintiffs' loan. Many of the dates and amounts did not match information that had previously been provided to Plaintiffs (see supra) nor did the amounts listed in the Reinstatement Information document match the amount in the accompanying letter from B&S PLLC.

*Id.* ¶¶ 63, 67 & 72.

As with Plaintiffs' RESPA claims, their pleading of the FDCPA claims against "Defendants" generally, Am. Compl. ¶¶ 103-105, makes it difficult to ascertain what specific provisions of the FDCPA the Brock Defendants are alleged to have violated and what specific acts are allegedly attributable to the Brock Defendants. However, based on Plaintiffs' response to the motion to dismiss, it appears that Plaintiffs are alleging that the Brock Defendants attempted to collect a debt that they had failed to verify, in violation of 15 U.S.C. § 1692g(b), as evidenced by the conflicting information about Plaintiffs' loan that was provided to them by the Brock Defendants. Nevertheless, even assuming that the Brock Defendants had fair notice of the FDCPA claim alleged against them, Plaintiffs have failed to state sufficient factual allegations against the Brock Defendants to support such a claim under the FDCPA.

Plaintiffs attached to their initial Complaint the following correspondence from the Brock Defendants: two letters dated July 16, 2009, which provided the amount due to reinstate the loan, DE-1-35 & 1-44; what appears to be page two of a letter and attachment dated July 20, 2009, which was entitled "Payoff Information," DE-1-37; and a letter dated August 13, 2009, DE-1-43, which included an attachment entitled "Reinstatement Information," DE-1-45. Plaintiffs contend that the information contained within the July 16, 2009 letter and the August 13, 2009 Reinstatement Information are different, and, thus, shows that the Brock Defendants failed to verify the debt. The Brock Defendants point out that the reinstatement amount is

17

consistent throughout the various correspondence and that the fact that the payoff amount for the loan differs from the reinstatement amount does not support an FDCPA claim. The undersigned agrees.

As an initial matter, a court is not bound by conclusory allegations and unsupported assertions. While the Court must accept a plaintiff's well-pled allegations as true at this stage, the information provided by Plaintiffs with their Complaint, which the Court may properly consider, does not support their allegation that the Brock Defendants failed to verify the debt. Both the July 16, 2009 letters indicated that the amount due to the lender, Wells Fargo, was $2,550.72 and that the attorney fees and costs due to Brock & Scott were $1,000.00. Furthermore, both letters state that the figures were provided by Wells Fargo. On July 20, 2009, Plaintiffs requested an itemization of the reinstatement amount due, Am. Compl. ¶ 68, and on that same date, Brock & Scott sent the "Payoff Information" to Plaintiffs, which indicated unpaid principal of $70,847.09, accrued and unpaid interest of $2,310.30, late charges of $145.32, and a property inspection fee of $30.00. On August 13, 2009, the Brock Defendants sent Plaintiffs the itemization they requested in their July 20, 2009 letter. *Id.* ¶ 72. None of the information in these letters or statements appears contradictory, as Plaintiffs generally allege in their Amended Complaint. *Id.* The reinstatement amounts in the July 16, 2009 letters correspond to the Reinstatement Information provided on August 13, 2009, which indicated that to reinstate their loan, Plaintiffs were required to pay $3,550.72, including $145.32 in late charges, $30.00 noted as "other" (which appears from the detail to be inspection fees), and $1,000.00 in attorney fees and costs. Therefore, the documents provided by Plaintiffs in support of their Complaint simply do not bear out the conclusory allegations that they were provided with contradictory information.

18

Additionally, the documentation attached to Plaintiffs' Complaint indicates that the Brock Defendants provided Plaintiffs with the verification of the reinstatement amount, including an itemization of the attorney fees and costs, as they requested. The Fourth Circuit has explained that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). The Reinstatement Information provided to Plaintiffs on August 13, 2009, included a written itemization of the amount due to Wells Fargo, an itemization of the attorney's fees and costs, and showed how Plaintiffs' prior payment of $2,431.00 was applied, which is the information Plaintiffs requested in their July 20, 2009 letter.

Finally, it is unclear what collection activity the Brock Defendants are alleged to have taken *after* Plaintiffs requested verification. Plaintiffs mailed their payment to reinstate the loan along with their request for verification. Presumably, the Brock Defendants would take no further action to collect a debt that had already been paid, and Plaintiffs do not allege any further debt collection actions (with the exception of responding to Plaintiffs' requests) on the part of the Brock Defendants *after* Plaintiffs requested verification of the debt. Therefore, Plaintiffs have failed to state a claim against the Brock Defendants under the FDCPA for not ceasing collection efforts prior to obtaining verification of the debt, and it is recommended that this claim be dismissed as to the Brock Defendants.

### ii. Shapiro Defendants

As with the Brock Defendants, it is somewhat difficult to ascertain which provision of the FDCPA the Shapiro Defendants are alleged to have violated. However, based on the factual

19

allegations and Plaintiffs' response to the instant motion, it appears that the allegation regarding Defendants "pursuing a litigation with no basis in law to do so" is directed at the Shapiro Defendants. Further, it appears that Plaintiffs contend that the foregoing is a violation of 15 U.S.C. § 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." More specifically, subsection five provides "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" as an example of a false, deceptive, or misleading representation. 15 U.S.C. § 1692e(5). Plaintiffs allege that the Shapiro Defendants continued to pursue a foreclosure action in state court after Plaintiffs, then acting *pro se*, had removed the action to this Court. Am. Compl. ¶¶ 84-85. These allegations fail to state a claim under § 1692e.

Plaintiffs do not allege that the Shapiro Defendants used any "false, deceptive, or misleading representation or means" as required by § 1692e or that they made any threat to take an illegal action or an action that they did not intend to take, as required by § 1692e(5). At most, it appears Plaintiffs allege procedural improprieties, as opposed to threats of an action that cannot be legally taken. It would require an expansive view of § 1692e(5), which this Court has previously declined to take, to find that the allegations made by Plaintiffs fall within its prohibitions. *See Myers v. Sessoms & Rogers, P.A.*, 781 F.Supp.2d 264, 270 (E.D.N.C. 2011) (noting that "[t]he FDCPA . . . was not meant to convert every violation of a state debt collection law into a federal violation" and declining to impose liability for "inaction" by debt collector, which was not supported by plain language of statute). Furthermore, such allegations are not typical of a § 1692e(5) action. *See, e.g., Peak v. Southern & Allen*, No. 4:09CV00753, 2010 WL 1729958, at *2 (E.D. Ark. Apr. 27, 2010) (plaintiff alleges § 1692e(5) violation where defendant in a letter threatened a lawsuit that plaintiff claimed defendant did not intend to file at the time

20

defendant sent the letter); *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 361 (E.D.N.Y. 2006) (noting that "[w]here the debt collector is not authorized by its client to pursue legal action, threats of legal action have been found to be in violation of Section 1692(e)(5) [sic]").

Finally, the public record does not support Plaintiffs' claim. "[A] court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment." *Graham v. Lewis*, No. 5:10–CT–3044–D, 2011 WL 6748805, at *1 (E.D.N.C. Dec. 22, 2011) (citing Fed. R. Evid. 201; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). The state court file does not contain a notice of removal, [DE-63-2], which is required to effect the removal, 28 U.S.C. § 1446(d), and to divest the state court of jurisdiction, *see Schliewe v. Toro*, 138 Fed. App'x 715, 720, 2005 WL 1506168, at *3 (6th Cir. June 23, 2005) ("[W]hen a defendant fails to notify the state court promptly of the removal he creates concurrent jurisdiction over the case in both the state and federal court."). Additionally, the case was ultimately remanded by this Court to the state court for lack of subject matter jurisdiction, *Wells Fargo Bank, N.A. v. Bryant,* No. 5:10-cv-335-D, Order [DE-13] (E.D.N.C. May 12, 2011). This further undermines Plaintiffs allegations that the Shapiro Defendants took an action "that cannot legally be taken," as proscribed by § 1692e(5). Therefore, it is recommended that the Plaintiffs' FDCPA claims against the Shapiro Defendants be dismissed for failure to state a claim.

### e. FCRA

The Brock and Shapiro Defendants contend that Plaintiffs made no allegations against them to support a claim under the FCRA. Plaintiffs did not respond to this part of the Brock and

21

Shapiro Defendants' motions. Plaintiffs made the following general allegations with respect to their FCRA claims:

> 107. Defendants furnished inaccurate information to credit reporting agencies when they knew or should have known that the information was inaccurate.
>
> 108. Defendants failed to update Plaintiff's credit record after it knew or should have known that certain information in her credit report was inaccurate.
>
> 109. Defendants willfully or, alternatively, negligently failed to comply with the terms of the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. in connection with this incident.

Am. Compl. ¶¶ 107-109. There are no factual allegations that the Brock or Shapiro Defendants furnished any information to credit reporting agencies or otherwise failed to comply with the FCRA. Therefore, it is recommended that Plaintiffs' FCRA claims be dismissed as to the Brock and Shapiro Defendants for failure to state a claim.

### f. NCUDTPA

#### i. Brock Defendants

The Brock Defendant contend that they are excluded from liability under the NCUDTPA, which prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75.1-1(a). Plaintiffs did not respond to this part of the Brock Defendants' motion. Plaintiffs made the following general allegations with respect to their unfair or deceptive claims:

> 113. Defendants used deceptive promises in commerce to induce Plaintiffs into making additional, duplicative, and unnecessary payments.
>
> 114. Defendants deceived Plaintiffs in an effort to initiate and proceed with foreclosure proceedings against Plaintiffs.

Am. Compl. ¶¶ 113-14. There are no factual allegations of deceptive promises made by the Brock Defendants to Plaintiffs to induce them to make payments or to initiate foreclosure proceedings. Furthermore, § 75.1-1 expressly excludes "professional services rendered by a

22

member of a learned profession" from the definition of "commerce." N.C. Gen. Stat. § 75.1-1(b). "The North Carolina courts have held that the practice of law is a learned profession." *Godfredson v. JBC Legal Group, P.C.*, 387 F. Supp. 2d 543, 548 (E.D.N.C. 2005) (citing *Sharp v. Gailor*, 510 S.E.2d 702, 704 (1999)). North Carolina courts have also held that "debt collection on behalf of clients is a professional service often performed by law firms and attorneys" and, thus, applied the professional services exemption found in § 75.1-1(b) to law firms and attorneys performing debt collection. *Id.* (citing *Reid v. Ayers*, 531 S.E.2d 231, 235 (N.C. Ct. App. 2000)). Therefore, it is recommended that Plaintiffs' NCUDTPA claims be dismissed as to the Brock Defendants.

### ii.  Shapiro Defendants

Similarly, the Shapiro Defendants contend that their conduct did not involve "commerce" and was not "unfair" or "deceptive" within the meaning of § 75.1-1. Plaintiffs counter that the pursuit of the state court foreclosure action after its removal to this Court was unfair or deceptive and that acting as a trustee in a judicial proceeding was part of the Shapiro Defendants' "business" and, thus, involved commerce.

As with the Brock Defendants, the Shapiro Defendants are exempt from liability under the NCUDTPA's professional services exemption. *See supra* section II.f.i. Therefore, it is recommended that Plaintiffs' NCUDTPA claims be dismissed as to the Shapiro Defendants.

### g.  Trespass to Real Property

The Brock and Shapiro Defendants contend that Plaintiff failed to allege any facts as to them that would state a claim for trespass. Plaintiffs failed to respond to this part of the Brock and Shapiro Defendants' motions. Under North Carolina law, the elements of a claim for trespass to real property are "(1) possession of the property by the plaintiff when the alleged

23

trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass." *Broughton v. McClatchy Newspapers, Inc.*, 588 S.E.2d 20, 29 (N.C. Ct. App. 2003). In their Amended Complaint, Plaintiffs allege illegal entry onto the Property and resulting damage by "Defendant LPS' agents, affiliates, field employees and/or contractors[.]" Am. Compl. ¶ 60. There are no allegations regarding the Brock or Shapiro Defendants that would state a claim for trespass. Therefore, it is recommended that Plaintiffs' trespass claim be dismissed as to the Brock and Shapiro Defendants for failure to state a claim.

### h. Conversion

The Brock and Shapiro Defendants contend that Plaintiffs failed to allege any facts as to them that would state a claim for conversion. Plaintiffs failed to respond to this part of the Brock and Shapiro Defendants' motions. Under North Carolina law, the elements of a claim from conversion are "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *Day v. Rasmussen*, 629 S.E.2d 912, 914 (N.C. Ct. App. 2006) (citing *Di Frega v. Pugliese*, 596 S.E.2d 456, 463 (2004)). As with the claim for trespass, Plaintiffs allege acts by Defendant LPS that may be construed to state a claim for conversion, Am. Compl. ¶ 60, but there are no such allegations regarding the Brock or Shapiro Defendants. Therefore, it is recommended that Plaintiffs' conversion claims be dismissed as to the Brock and Shapiro Defendants for failure to state a claim.

### i. Fraud

The Brock and Shapiro Defendants contend that Plaintiffs failed to allege any facts as to them that would state a claim for fraud. Plaintiffs failed to respond to this part of the Brock and Shapiro Defendants' motions. Under North Carolina law, the elements of a fraud claim are "(1)

[f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Cobb v. Pennsylvania Life Ins. Co.*, 715 S.E.2d 541, 549 (N.C. Ct. App. 2011) (quoting *State Props., L.L.C. v. Ray*, 574 S.E.2d 180, 186 (N.C. Ct. App. 2002)). Furthermore, pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs generally allege that the "Defendants" made false representations that were relied upon by Plaintiffs and that resulted in damages, Am. Compl. ¶¶ 124-126, but there are no factual allegations specifically as to the Brock or Shapiro Defendants. Therefore, it is recommended that Plaintiffs' fraud claim be dismissed as to the Brock and Shapiro Defendants for failure to state a claim.

### j. Quiet Title

The Brock and Shapiro Defendants contend that they are not necessary to any quiet title claim. Plaintiffs failed to respond to this part of the Brock and Shapiro Defendants' motions. "An action [to quiet title] may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims[.]" N.C. Gen. Stat. § 41–10. Again, as with their other claims, Plaintiffs allege generally that "Defendants" have created defects in the chain of title, Am. Compl. ¶¶ 128-129, but they have not alleged that the Brock or Shapiro Defendants claim any adverse interest in the Property. Furthermore, the Brock Defendants are no longer the substitute trustee. Am. Compl. ¶ 83. Therefore, it is recommended that Plaintiffs' quiet title claims be dismissed as to the Brock and Shapiro Defendants for failure to state a claim.

### k. Violations of North Carolina General Statutes §§ 58-70 *et seq.*, 75-50 *et seq.*, and 45-90 *et seq.*

25

The Brock Defendants contend that the factual allegations do not support that they participated in any of the conduct alleged to violate North Carolina General Statutes §§ 58-70 *et seq.*, 75-50 *et seq.*, and 45-90 *et seq.* Plaintiffs failed to respond to this part of the Brock Defendants' motion. With respect to § 58-70 *et seq.*, Plaintiffs allege the following:

> 132. Defendants attempted to collect debt via unfair threats, coercion, or attempts to coerce including but not limited to changing Plaintiff's locks, numerous threats through correspondence with no basis in fact or law, and proceeding with litigation in North Carolina state court after the matter had lawfully been removed to federal court.
>
> 133. Defendants attempted to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representations including, but not limited to, misrepresenting the amount of debt owed on the Note, misrepresenting their ownership status of the Note, misrepresenting their ability to collect on behalf of the true owner of the Note, and attempting to proceed with a foreclosure in North Carolina state court after the matter had been lawfully removed to federal court.

Am. Compl. ¶¶ 132-133. With respect to § 75-50 *et seq.*, Plaintiffs allege essentially identical conduct on behalf of "Defendants" generally:

> 136. Defendants attempted to collect debt via unfair threats, coercion, and/or attempts to coerce including but not limited to changing Plaintiff's locks, trespassing on and conversion of Plaintiff's property, threatening actions with no basis in law or fact through correspondence, and proceeding with litigation in North Carolina state court after the matter had lawfully been removed to federal court.
>
> 137. Defendants attempted to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representations including, but not limited to, misrepresenting the amount of debt on the Note, misrepresenting their ownership status of the Note, misrepresenting their ability to collect on behalf of the true owner of the Note, and attempting to proceed with a foreclosure in North Carolina state court after the matter had been lawfully removed to federal court.

*Id.* ¶¶ 136-137. With respect to § 45-90 *et seq.*, Plaintiffs allege the following:

26

140. Defendants continually rejected Plaintiff's requests for information regarding the Note, Deed of Trust, nature of debt, amount of debt and many other easily verifiable questions relating to the Property.

141. Defendants failed to timely assess fees and process payments.

142. Defendants assessed fees which were impressible under the law and under the Deed of Trust.

As to §§ 58-70 *et seq.* and 75-50 *et seq.*, there are no specific factual allegations that the Brock Defendants engaged in the conduct described in Plaintiffs' Amended Complaint.

With respect to the Shapiro Defendants, Plaintiffs contend that their pursuit of the state court foreclosure action after it had been removed to this Court violates § 58-70 *et seq.*, or the NCCAA. While it is unclear from the pleadings what particular provisions of the NCCAA the Shapiro Defendants are alleged to have violated, in Plaintiffs' response to the instant motion they contend that the Shapiro Defendants' actions "constitute unfair threats or coercive attempts as well as deceptive or misleading misrepresentations." Pl.s' Opp'n at 5 [DE-59]. As explained with respect to the FDCPA claims, *see supra* section II.d.ii., the acts that Plaintiffs attribute to the Shapiro Defendants – pursuing the state court action after it had been removed to this Court – may constitute a procedural violation (as opposed to an act that cannot be taken legally), are unsupported by the public record, and do not reflect any "threat," "coercive attempt," or "deceptive or misleading misrepresentation."

Furthermore, as to the 75-50 *et seq.*, or the NCDCA claims, Plaintiffs "must also satisfy the requirements of a more general claim under the NCUDTPA," *Godfredson*, 387 F. Supp. 2d at 548 (citing *Reid*, 531 S.E.2d at 235), and the professional services exemption of the NCUDTPA has been held to apply to NCDCA claims, *id.* Therefore, for the reasons stated above, *see supra*

27

section II.f.i. & ii., the Brock and Shapiro Defendants are exempt from Plaintiffs' NCDCA claims.

As to § 45-90 *et seq.*, its provisions apply to a "servicer," which is defined to expressly exclude "[a] licensed attorney, who in the practice of law or performing as a trustee, accepts payments related to a loan closing, default, foreclosure, or settlement of a dispute or legal claim related to a loan." N.C. Gen. Stat. § 45-90(2). Accordingly, the Brock and Shapiro Defendants are not subject to liability under § 45-90 *et seq.* It is, therefore, recommended that Plaintiffs' claims under North Carolina General Statutes §§ 58-70 *et seq.*, 75-50 *et seq.*, and 45-90 *et seq.* be dismissed as to the Brock and Shapiro Defendants for failure to state a claim.

### I. Punitive Damages

Having recommended that all Plaintiffs' claims against both the Brock and Shapiro Defendants be dismissed, it is also recommended that their claims for punitive damages be dismissed against those Defendants.

### CONCLUSION

It is hereby **RECOMMENDED** that the Brock Defendants' motion to dismiss [DE-45] be **GRANTED** and that the Shapiro Defendants' motion to dismiss [DE-56] be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not

28

objected to, and accepted by, the District Court.

This the 27 day of January, 2012.

DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE

29