IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-237-D

| | | |
|---|---|---|
| JERRY BRYANT, and | ) | |
| CATHLEEN BRYANT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WELLS FARGO BANK, NATIONAL | ) | |
| ASSOCIATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On June 14, 2010, Jerry Bryant and Cathleen Bryant (collectively "Bryants" or "plaintiffs")

sued Wells Fargo Bank, N.A., ("Wells Fargo") and numerous other defendants [D.E. 1, 1-1–1-3].

On January 18, 2011, plaintiffs filed an amended complaint [D.E. 12]. Plaintiffs' various state and

federal law claims relate to a mortgage on plaintiffs' residential property located in Raleigh, North

Carolina. Am. Compl. ¶ 52. Defendants Brock & Scott Holdings, Inc., ("Brock & Scott") and

Jeremy B. Wilkins ("Wilkins") (collectively "Brock defendants"), and defendants Shapiro & Ingle,

LLP ("Shapiro & Ingle"), Grady Ingle ("Ingle"), Elizabeth B. Ellis ("Ellis"), and Richard McNeely

("McNeely") (collectively "Shapiro defendants") (collectively "defendants") moved to dismiss

plaintiffs' complaint against them for failure to state a claim upon which relief can be granted [D.E.

45, 56]. Plaintiffs filed memoranda in opposition to the motions to dismiss [D.E. 58, 59]. On

January 24, 2012, Magistrate Judge Daniel issued a memorandum and recommendation ("M&R")

as to the motions to dismiss [D.E. 67]. In the M&R, Judge Daniel recommended that the court

grant the motions and dismiss plaintiffs' claims against defendants. M&R 1. On February 7, 2012,

plaintiffs objected to the M&R [D.E. 68]. Defendants did not reply to plaintiffs' objections. As explained below, the objections lack merit. Accordingly, the court overrules the objections, adopts the M&R, and grants defendants' motions to dismiss.

I.

"The Federal Magistrates Act requires a district court to make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (alteration in original) (emphasis and quotation omitted); see 28 U.S.C. § 636(b). Absent a timely objection, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (quotation omitted).

The court has reviewed the M&R, the record, and plaintiffs' objections. As for those portions of the M&R to which no party objected, the court is satisfied that there is no clear error on the face of the record.

The court has reviewed de novo the portions of the M&R to which plaintiffs objected. Plaintiffs raise five objections to the M&R. Pls.' Obj. [D.E. 68] 1–13. They argue that Judge Daniel erroneously determined that a substitute trustee was not a party to a deed of trust and therefore not subject to a breach of contract claim, that plaintiffs failed to specifically allege that defendants were substitute trustees, that plaintiffs did not adequately plead that defendants had breached their fiduciary duties, and that plaintiffs failed to adequately state a claim for breach of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and North Carolina's debt collection statutes, N.C. Gen. Stat. §§ 58-70-90 et seq.

2

A.

Plaintiffs' rest their breach of contract claim on defendants' alleged failure to abide by the terms of the deed of trust. See Am. Compl. [D.E. 12] ¶¶ 63, 83, 89–91; see Compl. [D.E. 1], Ex. A ("Deed of Trust"). Defendants were not original parties to the deed of trust; however, plaintiffs allege that each defendant served as a substitute trustee. Am. Compl. ¶¶ 23, 46, 48, 49. Because defendants were not original parties to the deed of trust, and because nothing in the deed of trust or North Carolina appellate authority clearly permits a breach of contract action against substitute trustees to a deed of trust, Judge Daniel recommended dismissal of plaintiffs' breach of contract claim. See M&R 8.

Under North Carolina law, a defendant who "was not a party to [a] contract . . . cannot be held liable for any breach" of that contract. Canady v. Mann, 107 N.C. App. 252, 259, 419 S.E.2d 597, 601 (1992); see Childress v. Concord Hospitality Assocs., LLC, 714 S.E.2d 274, 2011 WL 2848767, at *6 (N.C. App. July 19, 2011) (unpublished table decision). However, a deed of trust imposes certain rights and obligations upon a trustee. See Sprouse v. N. River Ins. Co., 81 N.C. App. 311, 316, 344 S.E.2d 555, 559 (1986) ("The deed of trust results in legal title to the property being in the trustee."); Sloop v. London, 27 N.C. App. 516, 519, 219 S.E.2d 502, 504–05 (1975) (recognizing that a deed of trust imposed on a trustee a fiduciary duty "to use diligence and fairness in conducting [a foreclosure] sale"). Thus, a trustee may be liable for breach of a fiduciary duty imposed by a deed of trust. See Sloop, 27 N.C. at 519–20, 219 S.E.2d at 504–05. However, plaintiffs have not cited any language in the deed of trust or any case from a North Carolina appellate court suggesting that, under North Carolina law, a substitute trustee who was not an original party to a deed of trust is subject to a breach of contract action under the deed of trust.

3

Sitting in diversity, the court must predict how the Supreme Court of North Carolina would rule on this issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must not "create or expand [North Carolina] public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (quotation omitted). Because North Carolina courts have not recognized a substitute trustee's contractual liability under a deed of trust, this court's doing so would "create or expand [North Carolina] public policy." Id. Thus, the court declines to do.

In opposition to this conclusion, plaintiffs cite a Fourth Circuit decision in which the Fourth Circuit, construing Virginia law, held that a purchaser of a deed of trust acquired the contractual rights that the deed of trust afforded to the original holder of the note and deed of trust. See Horvath v. Bank of N.Y., N.A., 641 F.3d 617, 625 (4th Cir. 2011); Pls.' Obj. 2–3. Plaintiffs argue that it follows from Horvath that a substitute trustee becomes a party to a deed of trust, and thus is subject to a breach of contract action under the deed of trust. Pls.' Obj. 3. Plaintiffs then argue that defendants were substitute trustees possessing the power of foreclosure. Id. 3–5. Plaintiffs conclude that defendants "should be liable for breach of [the] deed of trust" because "[t]he contractual rights and duties of a trustee in conducting a foreclosure are the very purpose for the existence of the deed of trust contract." Id. 5.

Horvath does not help plaintiffs. First, unlike in Horvath, plaintiffs' amended complaint does not allege that defendants were parties to the deed of trust. See Am. Compl. ¶¶ 89–91. Second, in Horvath, the Fourth Circuit relied upon "several centuries" of Virginia law in reaching its decision. 641 F.3d at 618, 621, 626. Moreover, the Fourth Circuit's conclusion regarding the rights of the deed of trust's purchaser rested upon the language of the deed of trust. Id. at 625. The court

4

held that a reading of the instrument that withheld from the deed of trust's purchaser rights enjoyed by the original lender would defeat the instrument's transferability provision. Id. Thus, Horvath did not create or expand Virginia public policy, see Time Warner, 506 F.3d at 314, but instead applied plain contractual language based on settled Virginia precedent. Horvath, 641 F.3d at 625. In contrast, plaintiffs cite nothing in the deed of trust that would permit plaintiffs to sue the substitute trustee for breach of contract and cite no North Carolina appellate authority that plainly supports their position. Accordingly, plaintiffs' claim fails.

B.

Plaintiffs also object to Judge Daniel's conclusion that they failed to state an FDCPA or an analogous North Carolina claim against defendants. See Pls.' Obj. 11–13. Specifically, plaintiffs argue that Judge Daniel incorrectly determined that plaintiffs had not adequately pleaded that the Brock defendants violated section 1692g of the FDCPA. See Pls.' Obj. 10–11.

Section 1692g requires a debt collector, within five days of initiating collection-related contact with a consumer, to send the consumer a "validation notice" stating

(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt . . . the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt . . . is disputed, the debt collector will obtain verification of the debt . . . and [will mail to the consumer] a copy of such verification . . . ; and (5) a statement that, upon the consumer's written request, within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). To comply with the FDCPA, a validation notice "must be placed in such a way to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer." United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 139 (4th Cir. 1996). Moreover, the validation notice "must not be overshadowed or contradicted by other messages." Id.; see Miller

5

v. Payco-Gen. Am. Credits, Inc., 943 F.2d 482, 484 (4th Cir. 1991); Garcia-Contreras v. Brock & Scott, PLLC, 775 F. Supp. 2d 808, 813 (M.D.N.C. 2011); 15 U.S.C. § 1692g(b).[1]

In their amended complaint, plaintiffs allege that all defendants, including the Brock defendants, "in an attempt to collect a purported debt . . . , engag[ed] in numerous improper tactics in correspondence [with plaintiffs]." Am. Compl. ¶ 104. In their objection to the M&R, plaintiffs significantly expand this allegation. Specifically, plaintiffs contend that the Brock defendants first contacted them regarding debt collection on July 15, 2009. Pls.' Obj. 11.[2] According to plaintiffs, on July 20, 2009, and within five days of July 15, 2009, the Brock defendants sent them a validation notice. Pls.' Obj. 11; see Compl [D.E. 1], Ex. 37 ("Validation Notice").[3] However, plaintiffs contend that their earlier receipt of a July 16, 2009 letter from the Brock defendants overshadowed the subsequent validation notice. Pls.' Obj. 11. In the July 16, 2009 letter, the Brock defendants

---

[1] In Garcia-Contreras, the Middle District of North Carolina held that the statutory prohibition on overshadowing, which on its face does not appear to apply until after a debtor's receipt of a validation notice, see 15 U.S.C. § 1692g(b), does not foreclose a debtor from bringing an overshadowing "claim involving an initial communication containing the validation notice." Garcia-Contreras, 775 F. Supp. 2d at 814 (collecting cases). The court noted judicial uncertainty as to whether an overshadowing claim based on a validation notice arose under subsection (a) or the recently added subsection (b). Id. at 814–16 (collecting cases). The court suggested that Congress intended its explicit prohibition on overshadowing to cover the validation notice and subsequent communications, but held that it did not need determine the scope of the statute, as it would assume the complaint properly asserted an overshadowing claim under the statute. Id. at 815–16. The Garcia-Contreras court did not decide whether the statute permits an overshadowing claim based on a communication sent before a validation notice.

[2] In their amended complaint, plaintiffs fail to allege that the Brock defendants contacted them on July 15, 2009. See Am. Compl.

[3] Plaintiffs attached to their amended complaint only a partial copy of the validation notice. See Validation Notice. The attached portions comply with section 1692g(a). See id. Notably, plaintiffs do not argue that the validation notice itself was legally deficient. See Pls.' Obj. 11. Therefore, the court concludes that the validation notice sent on July 20, 2009, satisfied defendants' statutory obligation.

6

informed plaintiffs of the amount owed for reinstatement of their mortgage, and stated that if plaintiffs did not remit the stated amount by July 29, 2009, the amount due for reinstatement would increase. See Compl., Ex. 35 ("July 16, 2009 Letter"); Am. Compl. ¶ 67. Plaintiffs suggest that the July 16, 2009 letter's inclusion of a deadline for repayment before an increase in the amount owed constituted "a demand [that] [p]laintiffs pay the amounts necessary to reinstate their loan within 9 days[,]" overshadowing the July 20, 2009 validation notice. Pls.' Obj. 11; see 15 U.S.C. § 1692g(a).

The argument lacks merit for at least two reasons. First, plaintiffs' allegations do not support a claim that the July 16, 2009 letter overshadowed the validation notice. The Brock defendants apparently sent the July 16, 2009 letter at plaintiffs' request and not to obscure the effect of the subsequently delivered validation notice. See July 16, 2009 Letter ("Per your request, following are the amounts required to reinstate [your] loan . . . ."). Moreover, the only portion of the July 16, 2009 letter that could be construed as overshadowing the validation notice was the statement that the amount owed would increase if plaintiffs did not make payment within nine days. See id. Plaintiffs do not state how a statement that appears to merely affirm the accrual of interest would overshadow the least sophisticated consumer's understanding of his right to request that a debt collector provide verification of the debt. Any argument on this point fails because "even the most unsophisticated consumer would understand that . . . debt accrues interest." Weiss v. Zwicker & Assocs., P.C., 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009).

Second, even if the July 16, 2009 letter overshadowed the July 20, 2009 validation notice, plaintiffs' amended complaint fails to state a claim under section 1692g. Plaintiffs' allegation that all defendants violated the FDCPA by "engaging in numerous improper tactics in correspondence[,]" see Am. Compl. ¶ 104, was insufficient to put the Brock defendants on notice of the nature of plaintiffs' FDCPA claims against them. See M&R 18–19. Although plaintiffs attached the July 16,

7

2009 letter and validation notice to their original complaint, their amended complaint does not include allegations about these documents that support their section 1692g claim. See Am. Compl. Moreover, merely attaching these documents to the original complaint does not state a claim. Furthermore, plaintiffs' section 1692g argument that they raise now cannot be found in the amended complaint's vague FDCPA claim, and plaintiffs may not amend their pleading by raising new allegations in response to a Rule 12(b)(6) motion. Schneider v. Calif. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers . . . ." (emphasis removed)); Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993) (same); cf. Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009) (plaintiff may not amend complaint through subsequent briefing). Thus, Judge Daniel did not err in concluding that plaintiffs failed to state a section 1692g claim against the Brock defendants for which relief can be granted.

Next, plaintiffs argue that defendants violated the FDCPA and parallel North Carolina statutes by "attempt[ing] to collect[] marked up, unreasonable, and duplicative attorneys' fees and costs." Pls.' Obj. 11–12. The FDCPA and North Carolina law prohibit a debt collector from collecting a debt that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f; see N.C. Gen. Stat. § 58-70-115 ("No collection agency shall collect or attempt to collect any debt by use of any unfair practices."). In their amended complaint, plaintiffs allege that they were "repeatedly . . . charged marked-up, duplicate and unreasonable fees." Am. Compl. ¶ 86.

Plaintiffs fail to allege which of the multitude of defendants assessed these fees against them, when these fees were assessed against them, or what made them "marked-up, duplicate and unreasonable." Moreover, in raising their FDCPA and North Carolina debt collection claims,

8

plaintiffs do not specifically refer to the allegations contained in paragraph 86, much less unreasonable attorneys' fees. See Am. Compl. ¶¶ 102–05, 135–38. A "conclusory statement" like the one in paragraph 86, coupled with "threadbare recitals of the elements of . . . cause[s] of action" does not state a claim upon which relief can be granted. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Although plaintiffs substantially expound upon this claim in their objections to the M&R, see Pls.' Obj. 8–10, 11–12, plaintiffs may not add to their insufficient pleading via objections to the M&R. Schneider,151 F.3d at 1197 n.1; Harrell, 13 F.3d at 236; cf. Wahi, 562 F.3d at 617. Accordingly, plaintiffs have failed to state an FDCPA or North Carolina debt collection claim.

Finally, plaintiffs argue that they have adequately stated a claim under section 1692e of the FDCPA against the Shapiro defendants. Pls.' Obj. 12–13. Section 1692e prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. 1692e(5). Plaintiffs argue that the Shapiro defendants violated this provision by "continu[ing] to attempt to foreclose in state court for months after the state court had been divested of jurisdiction." Pls.' Obj. 12. Plaintiffs raised this allegation in their amended complaint. See Am. Compl. ¶¶ 84–85 ("Defendants zealously pursued foreclosure against [p]laintiffs in the improper forum for months."); id. ¶¶ 104–05 ("Defendants failed to abide by the terms of the [FDCPA by] . . . pursuing a litigation with no basis in law to do so."). However, Judge Daniel concluded that plaintiffs' alleged facts did not support a violation of section 1692e. M&R 20. Judge Daniel noted that "[a]t most . . . [p]laintiffs allege procedural improprieties, as opposed to threats of an action that cannot legally be taken." Id. In their objection, plaintiffs argue that there is a "an issue of fact as to whether or not the Shapiro [d]efendants had a legal right to move forward with their foreclosure process." Pls.' Obj. 12. Assuming that the Shapiro defendants proceeded with the state action after plaintiffs filed a notice of removal does not call into question Judge Daniel's sound conclusion that

9

such conduct does not give rise to a section 1692e(5) claim. See M&R 20. Accordingly, the court overrules this objection.

II.

Judge Daniel did not err in recommending that the court dismiss plaintiffs' claims against defendants pursuant to Rule 12(b)(6). Accordingly, the court OVERRULES plaintiffs' objections [D.E. 68] and adopts the M&R [D.E. 67]. The court GRANTS defendants' motions to dismiss [D.E. 45, 56].

SO ORDERED. This **19** day of March 2012.

JAMES C. DEVER III
Chief United States District Judge

10